## Odell Pinckard v. The State.

### No. 1176.   Decided May 10, 1911.

### Rehearing Denied June 21, 1911.

**1.—Arson—Accessory—Wife of Codefendant—Accomplice.**

Where, upon trial of arson, the wife of a codefendant testified on the trial that the defendant, on the day the alleged house was burned, called her to the door and pointed out the burning building saying that he had burned it, and said witness further admitted that she had denied having knowledge of these circumstances to persons who were not officials after her husband and the defendant were arrested:   Held that this did not make her an accessory, and there was no error in the court's failure to submit the question of accomplice to the jury.

**2.—Same—Evidence—Other Offense.**

Where, upon trial of arson, defendant's codefendant denied that he had brought home stolen goods several days before the alleged arson and gave them to his wife, there was no error in not permitting said codefendant's wife to testify that her husband did bring these things to her, as neither could be compelled to testify to incriminate themselves with an independent crime.

**3.—Same—Evidence—Husband and Wife.**

New matter not covered by the examination in chief, which may be used against the husband, can not be elicited from the wife on cross-examination.

**4.—Same—Evidence—Confessions—Warning.**

Where the written confessions of the defendant were made to the person giving him the proper warning, and otherwise complied with the statute, they were admissible in evidence.

**5.—Same—Evidence—Confessions—Voluntary.**

Where the question of voluntary confessions was not an issue in the trial, there was no error in the court's failure to submit this question to the jury by request of special charges, besides there was independent testimony showing the guilt of the defendant.

**6.—Same—Attorney and Client—Confessions.**

See opinion condemning practice of placing defendant in jail and not allowing his request to send for his attorneys until after he had made a confession.

**7.—Same—Community Property—Ownership.**

Where the alleged house was the community property of husband and wife, ownership was correctly alleged in the name of the husband in the prosecution for arson.

**8.—Same—Evidence—Ownership.**

Where, upon trial of arson, the evidence showed that the alleged house was the property of the party alleged in the indictment, the conviction was sustained on that ground.

Appeal from the District Court of Polk.   Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. Holshousen* and *F. Campbell,* for appellant.—On question of

confessions: Cain v. State, 18 Texas, 387; Lopez v. State, 12 Texas Crim. App., 27; Womack v. State, 16 Texas Crim. App., 178; Searcy v. State, 13 S. W. Rep., 782; Clayton v. State, 21 S. W. Rep., 255; Jenkins v. State, 60 Texas Crim. Rep., 236, 131 S. W. Rep., 543.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case appellant was indicted, charged with the offense of arson. Upon a trial he was convicted in the District Court of Polk County, Texas, and his punishment assessed at five years confinement in the penitentiary.

1. It appears from the record in this case that Tom Pinckard turned what is termed "State's evidence," and testified in effect that he and defendant burned the house in question. The wife of Tom Pinckard was used as a witness by the State, and the defendant complains, first, that the court refused to give a special charge requested instructing them that Mrs. Pinckard was an accomplice, and her testimony should not be considered as corroborative of that of Tom Pinckard, the admitted accomplice; second, it was complained that defendant offered to prove and could have proved by said witness that her husband, Tom Pinckard, had brought home a pitcher and some other articles, alleged to have been stolen by her husband. As to whether or not Mrs. Pinckard was an accomplice after the fact, or rather an accessory, by reason of the fact that she testified on the trial of this case that defendant on the day the house was burned, had called her to the door and pointed out the burning building, and told her that he had burned the building alleged to have been burned in the indictment, and admitted that when her husband and defendant had been arrested charged with the offense shortly after the house was burned she denied any knowledge of the circumstances, is the question to be decided. Both the defendant and the husband of the witness were under arrest and in jail at the time she admits she told Andy Franklin and others that she did not know anything about it. Does the fact that a witness denies knowledge of a crime to persons inquiring, who are not officials, make such person an accessory? We do not think so. In the case of Chenault v. State, 46 Texas Crim. Rep., 351, this court says:

"Article 86, Penal Code, provides: 'An accessory is one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid in order that he may evade an arrest or trial, or the executions of his sentence.' The proffered evidence, as disclosed by the two bills above, is insisted by appellant as being pertinent evidence in this case, upon the theory that the same would prove that the witnesses were accessories to the forger. We hold that said testimony is not admissible for this purpose. No one in this State can be an accessory after the fact, such as disqualifies him as a witness, unless he comes within the letter and spirit of the article

above quoted; that is, he must give some aid and assistance to the principal before he can be guilty. In other words, he must conceal the offender or give him some other aid in order that he may evade an arrest or trial. The aid here contemplated is such as furnishing him with a horse to flee upon; or giving him a gun with the view of resisting arrest for the offense, or some other overt active assistance. The evidence going to disqualify a witness must be of sufficient force to convict him of accessory to the crime before such witness would be an accessory. In Schackey v. State, 41 Texas Crim. Rep., 255, quoting from Mr. Bishop, we said: 'That the test of an accessory after the fact is that he renders his principal some personal help to elude punishment—the kind of help being unimportant. Keeping a witness by persuasion or intimidation from appearing against a felon on his trial does not render one the felon's accessory, though it is punishable as a misdemeanor.' And further, 'That we learn from the elucidation of the first volume (of the same author) that an accessory after the fact in felony is one who in any way aids the principal offender, whom he knows to be guilty of the felony to elude punishment.' 'One is not an accessory who merely neglects to make known to the officers that a felony has been committed, or who forbears to arrest the felon or agrees not to prosecute him. Keeping a witness by persuasion or intimidation from appearing against a felon on his trial does not render one the felon's accessory. 1 Bishop Crim. Law, sec. 694. Nor does the fact that one agrees for money not to give evidence against a felon, or knows of the felon and does not disclose it, make the party an accessory after the facts. There must be some independent criminality to make one an accessory.'" See also Prewett v. State, 41 Texas Crim. Rep., 262, 53 S. W. Rep., 880; Elizando v. State, 31 Texas Crim. Rep., 243, and cases cited.

Upon the second proposition, that the wife should have been permitted or required to testify to facts that would show her husband, Tom Pinckard, guilty of another and different offense, involving moral turpitude, we do not think the court erred in excluding or failing to permit said testimony to be adduced from the wife. In the first place, Tom Pinckard, while on the witness stand, had denied such facts and refused to testify in regard thereto on the ground that it might tend to criminate him in another and different offense. This testimony was adduced by defendant for the purpose of impeachment, and defendant was bound by the answer of the witness. It does not appear from the record that Tom Pinckard had ever been indicted or charged with such an offense, except that such appears from the questions propounded by defendant, and the witness Pinckard nor his wife could not be compelled to furnish evidence upon which an independent criminal prosecution might be based. (Brittain v. State, 36 Texas Crim. Rep., 406.) New matter not covered by the examination in chief, which may be used against her husband, can not be elicited from the wife on cross-examination. Creamer v. State, 34 Texas,

173; Greenwood v. State, 35 Texas, 587; Washington v. State, 17 Texas Crim. App., 197; Gaines v. State, 38 Texas Crim. Rep., 202.

2. The defendant also complains of the admissibility of an alleged confession of defendant. At request of defendant the original paper is sent up for our inspection. It reads:

"The State of Texas,
County of Polk.

"The following is the voluntary statement of O. D. Pinckard, made to me, M. S. Tew, on this the 21st day of May, A. D. 1909, after having first been duly warned by me, M. S. Tew, that he did not have to make any statement at all, and that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made: 'Me and Tom Pinckard went a cow hunting and come by Nickolas house and he said lets burn Nickolas house now is a good time we wouldn't be caught up with. he brought the wood in and I set fire to it, and he sat down there to see that I fired it.'

Signed O. D. Pinckard.

"Witnessed by
M. S. Tew,
E. H. Garvey."

Under all the decisions of this court such statement was admissible in evidence, as the warning, etc., complied fully with the statute on that question. (Jenkins v. State, 131 S. W. Rep., 543, and authorities there cited.) All the requisites held essential by a majority of the court in that case are complied with in this confession. Defendant insists that the question of whether or not it was voluntarily made should have been submitted to the jury, and asked several special charges in regard to this matter, which were refused. If the issue of whether voluntarily made or not was fairly raised by the evidence, then it was a question for the jury to determine. The only evidence in the record on this point was from the witness Garvey, introduced by defendant. Garvey testified that he went to defendant on two or three occasions and sought to induce him to tell him what he knew about the matter. The witness says he went so far as to tell this defendant that Tom had told all about it. Defendant on these occasions denied all knowledge of the burning of the house, but at a later date, while he was giving defendant his dinner, he voluntarily told witness (Garvey) about the matter. That he (Garvey) then went to the justice of the peace, Mr. Tew, and told him what defendant had said, and Mr. Tew went to the jail and defendant voluntarily made and signed the statement to Mr. Tew introduced in evidence. This was all the evidence in regard to the matter. No hope was held out to defendant; no threat nor any inducement offered, and the record being in this condition, the witness being offered by defendant, we

can not say that the court erred in not giving the special instructions requested. In the case of Zwicker v. State, 27 Texas Crim. App., 539, it is held that where there is no evidence raising the issue of whether voluntarily made or not there was no error refusing a special instruction submitting that issue.

3. However, we desire to say in this connection, there is a matter suggested by the record that we do not approve. It appears that as soon as defendant was placed in jail he requested that the attorneys now representing him be sent for, that he desired to talk with them about his case, and they were not sent for until after he had made the confession introduced in evidence. If the evidence, eliminating this confession, did not show appellant's guilt beyond a reasonable doubt, and in the record there was any evidence refuting the State's case, we would feel inclined to reverse this case because of such conduct. A defendant in jail is entitled to confer with his attorney when he requests permission to do so, and an officer having him in charge, instead of seeking to elicit a confession, after a request had been made to confer with attorneys, if a defendant really made a confession before his attorney was sent for, it ought to appear that an effort had been made to get word to the attorney, and that a defendant knew the attorney of his selection would come to see him or had refused to do so. Advantage of no kind or character ought ever to be taken of a prisoner in jail charged with crime, even to obtain the conviction of the guilty, but each and every one should be granted all the rights and privileges guaranteed to them under the law, and if the question of defendant's guilt or innocence was dependent upon the confession thus obtained, we would be loath to let the conviction stand. But as hereinbefore stated, inasmuch as the testimony, in addition to the confession, shows that defendant set fire to the house in question, and there is no testimony in the record tending to refute this evidence or show that defendant was not present participating in the offense, and he received the lowest penalty, we will not reverse the case, but here express our disapproval of such practice.

4. Appellant also complains that the evidence did not show the house burned to be the property of the party alleged (C. W. Nickles), and while the motion for a new trial was being heard, introduced in evidence a deed to the property from T. W. Acre to Mrs. Mattie Nickles, the wife of C. W. Nickles. C. W. Nickles was placed on the stand and testified: "When I came here I bought this piece of land from Acre and his wife and had the deed made in her name. I paid for it out of the earnings I earned after I married her." There was no other evidence offered as to the ownership of the house, and this would make it the community property of defendant and his wife. Under our laws all property acquired by either husband or wife during the marriage (except that which is acquired by gift, devise or descent) is deemed their community property, and during the mar-

riage relation may be disposed of only by the husband. (See articles 2968 and 2969, Rev. Civ. Stats.) The building was properly alleged to be the house of C. W. Nickles, as in arson a person in control of a building may be alleged as the owner or occupant of the building. See Allen v. State, decided at the present term of this court, and authorities there cited.

5. The only other question in the case, which is raised in a number of assignments, did the evidence show the house burned to be the property of the party alleged? Tom Pinckard and wife, W. M. Moye, Willie Dickens, and A. J. Franklin all speak of it as the property of C. W. Nickles, and in the evidence there was no issue raised as to this being the property of any person other than Nickles, and under all the testimony, especially if we take into consideration the confession of defendant, there can be no question that the house burned was the house of C. W. Nickles.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 21, 1911.—Reporter.]